## Case No. 5,147.

### Ex parte FULLER.

[2 Story, 327;[1] 5 Law Rep. 210.]

Circuit Court, D. Massachusetts. May Term, 1842.

H. W. Fuller, as assignee.
Mr. Rogers, for the bankrupt.

STORY, Circuit Justice. Two questions arising upon the statement of facts are submitted to this court for decision. 1. In the first place, when upon the principles of the common law, does a devise of real estate take effect in the state of Maine? 2. Is it from the date of the probate of the will, or from the death of the testator, and as connected with this, whether any assent to the devise is required before the estate vests in the devisee? Now, upon this question, I cannot say that I feel any doubt. The probate courts of Maine (like the probate courts of many other states in the Union) have original and exclusive jurisdiction over wills of real estate, as well as of personal estate; and the decision of the proper probate court, original or appellate, as to approval or disapproval of such wills, is final and conclusive as to the validity thereof, and cannot

---

[1] [Reported by William W. Story, Esq.]

be questioned or reëxamined in any other tribunal. In short, our probate courts generally possess the same exclusive jurisdiction over the probate of wills of real estate, that the ecclesiastical courts of England exercised over wills of personalty. This is admitted on all sides; and, indeed, is now too firmly established to admit of juridical controversy.

Now, as soon as a will of real estate, or personal estate, is admitted to probate, and approved. I take it to be clear, upon the principles of the common law, that the probate relates back to the death of the testator, and affirms and fixes the title of the devisee thereto, from that period. This would seem a necessary result; for no title can pass by descent or distribution to the heirs or next of kin of the testator, since the whole is disposed of by his will; and the title cannot be in abeyance, or in nubibus, at least, in contemplation of law. Thus, in every trial at the common law, involving a title by devise, if the devisee assents thereto, the title is in him from the death of the testator, by mere operation of law, if the will is established by the verdict of the jury; although the trial may not occur, until many years after the death of the testator. The like rule applies to the probate of wills of personalty in the ecclesiastical courts, where the title of the legatees, and of the executor, takes effect by relation from the death of the testator. It is wholly unnecessary to cite authorities upon such a point. But, if it were necessary, Co. Litt. 111b, is directly in point, where Lord Coke says, that, "In case of a devise by will of lands, whereof the devisor is seized in fee, the freehold, or interest in law, is in the devisee before he doth enter; and in that case, nothing, having regard to the estate or interest devised, descendeth to the heir." The same doctrine was firmly established in Massachusetts (from which Maine derives its jurisprudence) long before my time; and it is fully recognized in the case of Spring v. Parkman, 3 Fairf. [12 Me.] 127. The case of Shumway v. Holbrook, 1 Pick. 114, proceeds upon the admission of the like doctrine, and shows that no title can be proved to land by devise, in a court of common law, until the will has been proved in the proper court of probate.

As to the other point, there is no doubt that the devisee must consent, otherwise the title does not vest in him. But where the estate is devised absolutely, and without any trust or incumbrances, the law will presume it to be accepted by the devisee, because it is for his benefit; and some solemn, notorious act is required, to establish his renunciation or disclaimer of it. Until that is done, "Stabit presumptio pro veritate." That is sufficiently shown by the case of Townson v. Tickell, 3 Barn. & Ald. 31, cited at the bar, and the still later case of Doe d. Smyth v. Smyth, 6 Barn. & C. 112. Brown v. Wood, 17 Mass. 68, and Ward v. Fuller,

15 Pick. 185, manifestly proceeded upon the same foundation.

Now, in the present case, there is no pretence to say, that Ross has ever renounced or disclaimed the estate devised to him. The statement of facts is, that he has done no act accepting or declining the devise. If so, then the presumption of law is, that he has, by implication, accepted it, since it gives him an unconditional fee. But I think, that the very formulary, in which he has inserted a reference to it in the schedule of his estate is decisive to show that he intended to accept whatever estate should be devised to him by his grandfather's will. Until he filed his petition in bankruptcy, the presumption of his acceptance is irresistible; for it was clearly for his benefit; and after he had done so, I am of opinion, that he had no right to disclaim or renounce it. It would be a fraud upon his creditors; and a court of equity would compel him to do all acts necessary to perfect his title to the devised estate; and if he did not, no court of bankruptcy would decree him a certificate of discharge. The bankrupt act of 1841, c. 9, § 3 [5 Stat. 440], vests "all the property and rights of property, of every name and nature," of the bankrupt, by mere operation of law, in his assignee, upon the decree of bankruptcy. Nothing can be clearer, than that, at the time of his bankruptcy, the devise in the present case was a right of property vested in Ross. The law presumed his acceptance, until the contrary should be shown. His title could be devested only by his renunciation and disclaimer of the devise before that time; and the subsequent probate of the will, by relation, made the title complete in the assignee. If Ross's consent had been necessary to make it complete, he was bound formally to give it; and he may even be compelled to give it, by a court of equity. The right of property was inchoate, if it was not consummated, in the assignee from the moment of the decree in bankruptcy; and no subsequent act of the bankrupt could change it.

It has been suggested, that the devise was not beneficial to Ross, and therefore no presumption can arise of his acceptance of it. How that can be well made out, I do not perceive. Before his bankruptcy, it was clearly for his benefit; and that event has not changed the nature of the interest, but merely the mode of appropriating it. His own voluntary act has enabled his creditors to have the benefit of it. As an honest debtor, he must desire, that his creditors should derive as much benefit from all his "rights of property," as is possible. It would be a fraud on his part to withdraw any fund from their reach by a disclaimer or renunciation; and it ought to deprive him of a certificate of discharge. It is, therefore, clearly now for his benefit to presume his acceptance of the devise; rather than to presume him willing to aid in the perpetration of a fraud.

If this, be the true posture of the case, standing upon the general principles of the common law, the remaining question is, whether the Revised Statutes of Maine, of 1840, c. 92, § 25, have made any alteration in the operation of the common law, as to the probate of wills. The 25th section declares; "No will shall be effectual to pass real or personal estate, unless it shall have been duly proved and allowed in the probate court; and the probate of such will shall be conclusive as to the due execution thereof." The argument is, that under this clause, a will is a mere nullity before probate; that the probate gives it life and effect from that time, and not retroactively. It appears to me that this section is merely affirmative of the law, as it antecedently stood. The will before probate, is, in no just juridical sense, a nullity. The very language of the section prohibits such an interpretation. The will must still be the foundation of the whole title, inchoate and imperfect, if you please, until its validity is ascertained by the probate, but still a will, and not a nullity. It would be an anomaly in the use of language, to speak of the probate of a nullity. The probate ascertains nothing, but the original validity of the will as such. The fact of the testator gave it life; his death consummated the title, derivatively from himself; and the probate only ascertains that the instrument in fact is what it purports on its face to be. It might as well be said that a will of real estate, at the common law, is a nullity, until a jury has ascertained its validity; whereas the verdict ascertains only the fact that the title under the will is perfect, because it was duly executed by a competent testator, and therefore took effect by relation from the time of his death.

But if the argument itself were well founded, it would not warrant the inference attempted to be drawn from it. By the probate, when granted, the will, under the section, takes effect by relation back from the death of the testator. It recognises and vests the title in the devisee from that moment. It would otherwise happen, that if he should die before the probate, having accepted of the devise, no title could vest in him; but the bounty of the testator would be defeated. Such a construction of the section would be productive of the grossest mischiefs; and there is not a word in the section, which authorizes, or even countenances it. The section only provides, that no will shall be effectual to pass real estate, unless it shall have been duly proved; not, until it shall have been duly proved. When proved, it is to all intents and purposes a will; and it is to operate upon the interests of the testator, when he intended, that is, from the time of his death.

Upon the whole, my opinion is, that the question propounded by the district court, ought to be answered in the affirmative; and I shall direct a certificate accordingly.