# S. R. BOOTHE et al. v. STEPHEN M. and MARY E. CHEEK, Appellants.

### Division One, December 6, 1913.

1. **PARTITION: Adverse Possession: Petition in Prior Suit: Evidence.** A petition filed by the defendants here as plaintiffs in an earlier suit for partition of the land sought to be partitioned by this action is competent evidence, upon the issue of their adverse possession, to show that they were not holding adversely but were recognizing the rights of their cotenants to half of the land. The rule that an estoppel to be available as an independent defense must be pleaded, does not affect the competency of the petition as evidence of the nature of their claim.

2. ————: **Cotenancy: Possession of one Cotenant not Bar.** Mere possession by one cotenant is not enough to force his fellows to proceed to judgment in ejectment before they can maintain a suit in partition.

3. ————: ————: **Adverse Possession: Evidence.** Evidence *held* not to show such adverse possession in one cotenant as would preclude the institution of proceedings in partition against him by his cotenants.

4. **TRUSTS: Taking Title at Execution Sale: Scheme to Defraud Owner's Creditors.** Where one buys lands at an execution sale, the purchase price having been furnished by the owner and the purchaser agreeing to hold the title for him, in execution of a plan to defraud the owner's creditors, equity will raise no trust in the lands in the purchaser's hands.

5. ————: **Devise of Equitable Interest: Conveyance by Trustee Before Probate of Will.** A trustee's conveyance, made to a third party by direction of the devisee of the equitable interest, and before the probate of the will, becomes fully effective upon probate of the will and passes the whole title.

6. **COURTS: Trials: Governed by Facts Pleaded, not by Pleader's Conclusions of Law.** A court is to be governed by the facts as set out in the pleadings and not by conclusions of law which the pleader may draw from the facts.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond,* Judge.

AFFIRMED.

*N. T. Gentry* for appellants.

(1) Error was committed by the trial court in entering a judgment of partition, as the undisputed evidence showed that the defendants Stephen M. Cheek and Mary E. Cheek, his sister, were holding this land adversely to the plaintiffs, and to all others, claiming title thereto by virtue of the deed from Sophia E. Hutts, to Stephen M. Cheek, and by virtue by the will of John Hutts deceased. On that subject, our Supreme Court said: "It is well established in this State that where one is in the possession of land claiming it adversely against all others, one out of possession cannot maintain a suit against him for partition without first establishing his right in an action of ejectment, but after having done so he may maintain his action for partition against the person or persons in possession." Estes v. Nell, 140 Mo. 650; Wommack v. Whitmore, 58 Mo. 448. Not only did the defendant Stephen M. Cheek and his witness testify that he was holding possession of this land adversely, but the plaintiff J. H. Boothe (the only plaintiff who testified in this case), testified that defendant Cheek had been holding possession of the land ever since the death of John Hutts, that said defendant had collected the rents, paid the taxes, and that the plaintiffs could not get possession from him. And as early as 1858, the same doctrine was enunciated by SCOTT, J., who said: "Where one is in the adverse possession of land, claiming it exclusively against all others, one claiming title and out of possession cannot maintain a suit for partition. He must first try his right in an action of ejectment, and after that is established he may institute his proceedings for partition." Lambart v. Blumenthal, 26 Mo. 474; Snell v. Harrison, 131 Mo. 503. And the court further said: "If, therefore, defendants were at the time of the institution of this suit in the exclusive adverse possession of the land, claiming the same as

their own, and there had been an ouster before that time, then plaintiffs, although claiming as cotenants, cannot maintain this action and must resort to their action of ejectment in order to settle the question of title, before they can do so." Hutson v. Hutson, 139 Mo. 235; Chamberlain v. Waples, 193 Mo. 96; Shaw v. Gregorie, 41 Mo. 410; Rosier v. Griffeth, 31 Mo. 173; Coberly v. Coberly, 189 Mo. 16; 21 Am. & Eng. Ency. Law (2 Ed.), 147; Holloway v. Holloway, 97 Mo. 628; Colvin v. Hauenstein, 110 Mo. 575; Snyder v. Arn, 187 Mo. 165. The fact that the defendants asked the court to construe a deed and to reform a deed did not deprive them of the right to object to the partition of this land, especially as they alleged in their answer that they had been and were holding the same adverse to the plaintiffs. (2) The plaintiffs offered in evidence the petition for partition, which was filed by the defendant Stephen M. Cheek, prior to the institution of the present action. But that petition is no evidence against said defendant, for the reason that the will of John Hutts, deceased, had not then been probated. The defendant Cheek did not then know that said will could be probated, and did not know that the interest which said testator owned would go to Sophia E. Hutts, and thereby enure to him. This was testified to by defendant Cheek, and the dates and circumstances corroborated him. But even if said petition was evidence against him, as claimed by counsel for the plaintiffs, the plaintiffs are not in a position to get the benefit of such evidence, as they did not plead an estoppel either in their petition or replication. All of our authorities hold that an estoppel, to avail a party, must be specially pleaded. McClannahan v. Payne, 86 Mo. App. 284; Bray v. Marshall, 75 Mo. 327; Noble v. Blount, 77 Mo. 255; Avery v. Railroad, 113 Mo. 561; Sanders v. Chartrand, 158 Mo. 352; Chase v. Jennings, 159 Mo. 544; Casler v. Gray, 159 Mo. 588; Warden v. Baldwin, 51 Wis. 450; Anderson v. Hubble, 93 Ind.

570; Hudson v. Railroad, 101 Mo. 29; Ransom v. Stanberry, 22 Iowa, 334; Bigelow on Estoppel, pp. 453 and 544; Chitty on Pleading, pp. 543, 544; Bliss on Code Plead. (2 Ed.), sec. 364. (3) Error was also committed by the trial court in entering judgment for the plaintiffs, which judgment does not correspond with the allegations of plaintiffs' amended petition, the petition upon which the judgment was rendered. All of our authorities hold that a plaintiff cannot recover more than asked for, and that his recovery must be according to the allegations of the petition.

*Gillespy & Conley* and *Don C. Carter* for respondents

(1) The law is well settled in this State (a) that one tenant in common is presumed to hold possession for himself and his cotenants; (b) his simple possession without more and collecting rents and paying taxes are not acts showing a hostile holding; (c) before his holding can be said to be hostile there must be some overt, hostile act or conduct brought home to his cotenants showing that he asserts title in himself alone, and the title he claims must be from an independent source from the instruments under which he becomes a cotenant with plaintiffs. The following cases cited by appellant in his brief support the above propositions: Wommack v. Whitmore, 58 Mo. 448; Holloway v. Holloway, 97 Mo. 643; Coberly v. Coberly, 189 Mo. 17. Also the following cases: Chapman v. Kullman, 191 Mo. 247; Seibert v. Hope, 222 Mo. 630; Collier v. Gault, 234 Mo. 457; Colvin v. Hauenstein, 110 Mo. 575; Hutson v. Hutson, 139 Mo. 229; Rozier v. Griffith, 31 Mo. 171. Where both parties claim under the same instruments their rights under the same may be determined in a partition suit, though defendants' contention is that the instrument gives him the whole estate. Wommack v. Whitmore, 58 Mo.

448. In which case defendant claimed under a deed, the construction of which, he alleged, gave him the fee and also plead adverse possession and exclusive ownership. O'Brien v. Ash, 169 Mo. 300; Shepperd v. Fisher, 206 Mo. 208; Thomas v. Black, 113 Mo. 66; Shaw v. Gregone, 41 Mo. 410. Defendants themselves in this case put the title to this land in issue and asked the court to determine the title and cannot complain that the court did what they asked. As they do not seriously contend but what their possession follows their title, the finding against them as to title was necessarily a finding against them also as to possession. Plaintiffs petition alleges facts which show an equitable title in the heirs of Mrs. Hutts. Defendants' answer invokes the aid of a court of equity. So this entire proceeding is equitable in its nature. Under such circumstances adverse possession is no defense to a proceeding in which equitable titles are asserted and the power of a court of equity is invoked. Coberly v. Coberly, 189 Mo. 18; Holloway v. Holloway, 97 Mo. 640; Barnard v. Keathley. 230 Mo. 209. Where the possession is subordinate to the true title, there can be no adverse possession. Coberly v. Coberly, 189 Mo. 17; Shaw v. Gregorie, 41 Mo. 410; O'Brien v. Ash, 169 Mo. 300. Plaintiffs have been in the constructive possession of the land since Mrs. Hutts' death through their cotenant Cheek. It will be found from an examination of the cases cited by appellant and all others in the reports that the defense of adverse possession has never been sustained except in those cases where the cotenant claims under a title from an independent source, as by limitations. (2) It seems almost too plain for argument that the deed was intended to and did convey a one-half interest only. And if we consider the other evidence in the case, it helps rather than makes questionable this construction. It appears that Mrs. Hutts acquired a one-half interest from Drain at her own request, and Cheek

thought he had only received a one-half interest because that it what he conveyed as his entire interest four years later. As pointed out in the statement the deed shows through three expressions that one-half was the interest intended. The words "which is one-half interest," limit and define the previous words which are general. General provisions must give way to particular. Utter v. Sidman, 170 Mo. 299; Johnson v. Johnson, 170 Mo. 34. The deed is written just like any careful lawyer would have drawn it who was trying to convey a one-half interest. Rules of construction have practically been reduced to one, and that is, that the intentions of the grantor are to be gathered from the four corners of the instrument. (3) The petition did not constitute an estoppel, but was merely evidence to show how Cheek was holding the land at the time the petition was filed. The reason for the rule that estoppels must be pleaded is that they constitute an independent defense to the whole issue as to which they are pleaded. Under the code a pleader is not required to plead evidence only and such pleading is condemned. Notwithstanding this petition plaintiff could still have proved that he was in adverse possession after it was filed and the petition alone did not and could not defeat his whole claim of exclusive possession. It was offered and considered as evidence only. It is the duty of the court in partition cases to ascertain and determine and declare all the conflicting rights, titles and interests of the parties *inter se*. R. S. 1909, sec. 2572; Beedle v. Rebenack, 137 Mo. 185; Holloway v. Holloway, 97 Mo. 633; Thompson v. Holden, 117 Mo. 125; Hamilton v. Armstrong, 120 Mo. 597; Gunn v. Thurston, 130 Mo. 344; Lindell R. E. Co. v. Lindell, 142 Mo. 83. From which authorities it is evident that the court is not limited in its findings to the titles asserted in the petition nor must the petition be dismissed if the titles, as alleged, are not all proved, nor must it fail to find for a defendant

Boothe v. Cheek.

because it would also have to find the interests for plaintiffs more favorably than they ask, which is this case. Partition cases are now all embracing and adjudicate all questions between the parties to them, as they necessarily should. And if plaintiffs have failed to claim as much as they should have claimed, so also defendants by their own evidence alone offered to support their answer and the prayer thereof to determine title have supplied all the facts from which the court made its finding (i. e. the sheriff's deed and the evidence of Drain) of title in the heirs of John Hutts. There was a fraudulent conspiracy between Drain and John Hutts to defraud the Kinkade heirs. Such being the case Drain never held the title under any trust, but was the absolute fee simple owner and could give it away as he pleased. Hutts could not have shown his title, nor could those claiming under him, either his heirs, or his wife claiming under him or those claiming under her without showing his fraud. Miller v. Davis, 50 Mo. 572. Also it appears that John Hutts did not claim an equitable fee, but told Drain that at his, Hutts' death, he wanted the longest liver to have the land. "Equity neither creates nor enforces such a trust, contrary to the ascertained intention of the parties capable of acting for themselves." Morris v. Clare, 132 Mo. 232. If the title in fee was in Drain, then the common source of title is his deed and the judgment follows the estates created by that deed.

BLAIR, C.—This appeal is from a decree of the circuit court of Boone county partitioning one hundred and twenty acres of land.

**Partition.**

John Hutts formerly owned the land, but in 1876 a judgment for $1628.65 against him was obtained by the administrators of John Kinkade and the land was sold under execution in April, 1877. Under an arrangement with Hutts, George T. Drain bought in

the land for him with money which the weight of the evidence shows Hutts furnished. The price paid was less than half the judgment. There is evidence this plan was adopted by reason of other debts Hutts owed and to prevent the subjection of the property to their payment. Drain held the title thereafter, Hutts retaining possession and repaying to Drain the sum expended for taxes. Drain several times urged Hutts to take the title, saying it was not his (Drain's) land and he wanted it "fixed up." Hutts told him it was as he desired and said he wanted him to have it if he, Drain, outlived him.

Hutts died in March, 1901, leaving a will he had executed in Virginia in 1862, whereby he devised all his property to his wife, Sophia Hutts, who survived him. The couple was childless.

In November, 1901, Drain, at Mrs. Sophia Hutts' direction, executed a deed to the land in suit whereby he conveyed to her a one-half interest in the land in fee and a life estate in the remaining one-half interest, remainder in fee to the heirs of John Hutts. At this time Mrs. Hutts knew of the existence of the will mentioned, but one of the witnesses testifies she thought it was too old to be effective.

In December, 1901, Sophia Hutts executed a deed whereby she conveyed to appellant Stephen M. Cheek "for and in consideration of love and esteem and one dollar . . . her interest, which is one-half interest in the undivided tract or parcel of land described" as in the petition, the deed then reciting that Mrs. Hutts reserved "full control of said land and all of the profits thereof during her natural life."

October 26, 1905, appellant Stephen M. Cheek, for a recited consideration of $700, executed a deed whereby he conveyed to his sister and coappellant, Mary E. Cheek, "the following described tract or parcel of land, situated in the county of Boone, in the State of Missouri, to-wit: All of my undivided inter-

est in," describing the land in suit and proceeding: "This deed is given subject to the lifetime dower now held by Sophia Hutts. This deed is also given with the understanding that in case of the marriage or death of the said Mary E. Cheek the land herein described is to go to Stephen M. Cheek."

In October, 1906, Sophia Hutts died, and thereafter at some time prior to the February, 1907, term, of the Boone Circuit Court, the present appellants, Stephen M. and Mary E. Cheek, instituted a suit to partition the land here involved. The original petition in that suit was not offered in evidence in this, but on March 7, 1907, an amended petition was filed in which plaintiffs, the present appellants, alleged they owned jointly an undivided one-half of the lands now in suit and that they were "informed and believed" that those made defendants, the heirs at law of John Hutts, owned the remaining half.

In May, 1907, appellant Stephen M. Cheek caused the will of John Hutts to be probated, but it does not appear when, if at all, the partition suit, instituted by him and his sister, was dismissed.

In May, 1908, this suit was instituted. The plaintiffs and defendants constitute all the heirs at law of John Hutts and Sophia Hutts. June 1, 1908, these appellants filed in this suit an answer in which the will of John Hutts and the deeds executed by Drain and Sophia Hutts are set up; and it is averred, among other things, that "whatever right, title or interest plaintiffs (the heirs of John Hutts) acquired under the aforesaid deed of the said George T. Drain inured to the benefit of these defendants (the appellants here) or to the heirs at law of the said Sophia Hutts," and prayed that certain other heirs of Sophia Hutts be brought in, which, it appears, was done.

In April, 1909, a second amended petition was filed. The parties plaintiff are all the heirs of John

Hutts except Geneva and Leroy Hulen, who are made defendants. Plaintiffs, excepting Mollie Hutts and Patrick Hutts, are the children, and defendants Geneva and Leroy Hulen are children of a deceased daughter of J. H. Boothe, who was a brother of Sophia Hutts and whose wife was a sister of John Hutts.

Plaintiffs, excepting Patrick and Mollie Hutts, and defendants Geneva and Leroy Hulen are, there-fore, heirs at law of both John Hutts and Sophia Hutts, his wife.

The second amended petition proceeds somewhat upon the theory of the original answer filed in this case by appellants, alleges that by the deed from Drain, providing that at the death of Sophia Hutts an un-divided one-half of the land in suit should go to the heirs of John Hutts, these heirs took nothing but "whatever title they acquired inured to the benefit of Sophia Hutts who was their equitable owner," etc., and prayed that the property be partitioned, one-half to appellants and one-half to the heirs at law of Sophia Hutts.

Appellants' amended answer "admitted" that Sophia Hutts took the whole under Drain's deed, prayed that the deed from Sophia Hutts to Stephen M. Cheek be reformed by striking out the words "which is one-half interest," and averred that appellants were in the adverse possession of the land. The minor de-fendants answered, denying all allegations in the petition.

A reply, denying all allegations of new matter in appellants' answer, was filed.

The weight of the evidence showed that Drain executed the deed to Sophia Hutts by her direction and by his deed in November, 1901, conveyed the land as she desired it conveyed. The evidence offered by appellants to show that Sophia Hutts intended by her deed of December, 1901, to attempt to convey to ap-

pellant Stephen M. Cheek the whole of the land in suit, has a very clear tendency to the contrary. It consisted of her declaration that she intended he should have "all she owned," "all she possessed," "*her interest*" in and "her part" of the land.

The evidence on the issue of adverse possession will be adverted to in the course of the opinion.

The trial court found appellants to be entitled to one-half the land, that the heirs at law of John Hutts were entitled to the remaining half, and found that partition in kind could not be made, and ordered the land sold and distribution of the proceeds made accordingly.

Stephen M. Cheek and his sister are the sole appellants.

Counsel contends (1) that appellants were in such adverse possession as to preclude partition; (2) that the court erred in admitting in evidence the petition filed by appellants in the suit previously instituted by them; (3) that the deed from Sophia Hutts to Stephen M. Cheek should be either (a) construed to convey the whole of the land or (b) reformed; and (4) that there was error in awarding to plaintiffs a larger share of the land than claimed in the petition.

I.   (a)   The petition filed by appellants in the suit they previously instituted was competent upon the issue of adverse possession as an admission by appellants that they were not holding adversely but were, in fact, recognizing the rights of their cotenants to one-half the land. The authorities cited are to the effect that an estoppel to be available as an independent defense must be pleaded. That rule in no way affects the competency of the petition as evidence of the character of the claim appellants were making.

**Evidence:
Petition in
Prior Suit.**

253 Mo. 9

(b)  The trial court expressly found against appellants on the issue of adverse possession.   Appellant Stephen M. Cheek lived from childhood with John and Sophia Hutts until they died, and after the death of the latter remained in possession of the land.  His mere possession, however, was insufficient to force his cotenants to proceed to judgment in ejectment before they could maintain a suit in partition.   Neither appellant testified to claiming the land *adversely,* though Stephen M. Cheek did testify he paid the taxes and leased the land and collected the rents.   One of the plaintiffs testified that plaintiffs could not get possession and that Stephen M. Cheek had had possession since the death of Sophia Hutts, but also testified that formerly Stephen M. did not claim the land but that it "seemed" he was claiming it, at the time of the trial.  Considered together with the petition filed in the suit appellants instituted and the original answer filed in this case, in neither of which any claim is made except in accordance with their view of the record title, the former expressly setting up the interests of the heirs at law of John Hutts and the latter conditionally recognizing interests in the heirs at law of Sophia Hutts, there is no foundation for the claim that appellants were in such adverse possession as would preclude the institution by plaintiffs of partition proceedings.   [Collier v. Gault, 234 Mo. l. c. 465; Coberly v. Coberly, 189 Mo. l. c. 16, 17; Chapman v. Kullman, 191 Mo. l. c. 247; Rozier v. Griffith, 31 Mo. l. c. 174; Shepperd v. Fisher, 206 Mo. l. c. 249.]

II. (The evidence clearly shows that the deed Drain executed was drawn and executed at the instance of and in conformity to directions given by Sophia Hutts.

(a) The trial court expressly held that Drain held the fee simple title. This finding was doubtless based upon the court's conviction of the truth of the evidence, offered by appellants, tending to show that Drain bought in the land in 1877 under an arrangement with Hutts, the purpose of which was to defraud the creditors of the latter. If that evidence is true, then equity would raise no enforceable trust in the property, and, for the purposes of this case, neither Hutts nor his general devisee, Sophia Hutts, had, before the conveyance of Drain, any interest in the land, and the finding of the court was right. No complaint that the evidence is insufficient to support that finding is made in the briefs. If Drain had the fee simple title, then his conveyance in 1901 vested a half interest, in remainder, in the heirs of John Hutts, and the decree gives appellants all to which they have any claim.

*Trusts: Taking Title to Defraud Owner's Creditors.*

(b) If it be conceded, however, that the allegations of the petition were of a character precluding a finding on the ground of fraud against the validity of the trust, there is yet a reason which discloses that appellants have no interest in the land save that the decree gives them.

Whatever equitable interest John Hutts had passed by his will to Sophia Hutts, she became the beneficiary in the trust, if trust there was. Had John Hutts had the full title then a conveyance by Sophia Hutts delivered prior to the probate of the will under which she was sole devisee would not have been fully effectual upon delivery, but upon the subsequent probating of the will. it would have taken effect by relation as of its date. It would have conveyed an equitable interest, subject to be defeated by a final rejection of the will. This is the clear import of those decisions in this State to

*Devise of Equitable Interest: Conveyance by Trustee Before Probate of Will.*

the effect that the institution of contest proceedings restores the status, so far as the operation of the will is concerned, existing before the will is offered for probate, and that a conveyance by a devisee during contest of a will carries his interest subject to the judgment in the contest proceedings (McIlwrath v. Hollander, 73 Mo. 105; Hughes v. Burriss, 85 Mo. 660; Hines v. Hines, 243 Mo. l. c. 496; Robertson v. Brown, 187 Mo. l. c. 458 et seq.), and the principle is in full harmony with many other decisions and authorities. [Richards v. Pierce, 44 Mich. l. c. 446, and cases cited; Scott v. West, 63 Wis. l. c. 552; Will of Dardis, 135 Wis. l. c. 461; Hanley v. Kraftczyk, 119 Wis. l. c. 356, 357; Flood v. Kerwin, 113 Wis. l. c. 680; Walton v. Ambler, 29 Neb. l. c. 643; Mackey v. Mackey, 71 N. J. Eq. 688; Miller v. Douglass, 30 Ohio Cir. Ct. Rep. l. c. 668; Ives v. Allyn, 13 Vt. l. c. 630; Ex parte Fuller, 2 Story, 327.]

There is nothing in our statute expressly postponing the vesting (sufficiently to support a conveyance) of devises until probate of the will, and one section (6315, R. S. 1909) by implication recognizes the operative effect, in case of actual notice, of unproved wills. If this is not true, the provision in that section relating to wills unproved, but recorded prior to 1887, imparting notice after the lapse of a year, is meaningless. An intimation of like effect is found in Keith v. Keith, 97 Mo. l. c. 230.

Sophia Hutts, at the time of the execution, at her direction, of the deed by Drain, had full knowledge of the existence of her husband's will and of its provisions, and was advised by the probate judge, through the interposition of appellant Stephen M. Cheek, according to his testimony, that the will could be "renewed" but that some expense would be necessary to procure the evidence of the witnesses who lived in Virginia. She purposely, therefore, withheld the will from probate, but there is no reason to doubt her

knowledge of its validity in view of Stephen M. Cheek's testimony, despite the testimony of another witness that he heard her "say something about it;" that it was too old.

By the will Sophia Hutts became the sole beneficiary in the trust, if trust there was, before the probate of the will. A conveyance by her would have passed her equitable interest, subject to be defeated by the final rejection of the will. She could not have compelled, or conveyed to another the right to compel Drain to convey the legal title before the will was probated, but it can hardly be doubted that either she or her grantee could have accepted a voluntary conveyance from Drain which upon the probate of the will would have taken effect by relation as of its date. That difficulties might, in such a situation, arise upon the rejection of the will cannot affect the argument as to the effect of the conveyance if made.

A *cestui que trust,* of full age and under no disability, entitled to a conveyance, may direct it to be made to another, and the whole title will thereby pass (Matthews v. Thompson, 186 Mass. l. c. 18, 19; Rogers v. Tyley, 144 Ill. l. c. 666; Altschul v. Casey, 45 Oregon, l. c. 188, 189; Cotton v. Ward, 3 T. B. Monroe, l. c. 311, 312; Witter v. McCarthy Co., 43 Pac. (Cal.) 969); and there is no reason for saying that Sophia Hutts, who, upon the assumption that a trust existed, could have herself conveyed, might not accomplish directly her purpose by directing a conveyance by the trustee, nor for saying his voluntary conveyance executed by her direction would not draw to itself the equity she might have conditionally conveyed at that time and be as effectual to pass the title, subject to be defeated by the rejection of the will, as her own conveyance would have been or, after the will was probated, as conclusive as if the will had first been probated and then Drain had conveyed at Mrs. Hutts' direction.

With full knowledge, of full age and under no

legal disability, Sophia Hutts saw fit to divide the remainder in the land equally between appellants (her kinsmen) and the heirs at law of her husband. That she knew the will was valid is evidenced by the fact that she had Drain to convey to her a greater interest than she could have claimed in a case of her husband's intestacy. She intended to divide the property as the decree finds she did divide it, dealt with it on the theory she had so divided it, and died doubtless in the belief that one-half of the land her husband had acquired would go to his kinsmen and one-half to her kinsmen, the appellants here.

Of the disposition she made of the property her other heirs at law cannot complain, and her grantees, though also heirs, cannot take more than she had to convey. Her own intent to convey to Stephen M. Cheek but one-half of the land is clear from the deed to him and the declarations proved.

Whether there was or was not a trust equity will recognize, the trial court's decree properly describes and defines the interests of the parties.

III. It is insisted, however, that the court erred in awarding certain of plaintiffs greater interests than the petition alleges they own. The petition

**Facts Versus Conclusions of Law.**
sets out the *facts* on the theory of a valid trust of which Drain is alleged to be the trustee. The *conclusion of law* that Drain's deed was ineffective is not an allegation of fact nor an allegation the trial court was obliged to notice. It is a mere statement of a conclusion of law. Upon the *facts*, the trial court performed its duty, i. e., determined the interests of the respective parties and decreed accordingly. The judgment is affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur—*Lamm, J.,* in result.