AMELIA J. SCHOONOVER, Appellee, v. LEWIS D. OSBORNE et al., Appellees; W. D. SHEEAN, Intervener, Appellant.

**WILLS: Rights and Liabilities of Devisees—Renunciation of Devise.**
1    A testamentary trust or devise may, prior to acceptance, be renounced by the beneficiary thereof, so long as there is no fraudulent collusion with the remainderman, and such renunciation will revert back to the death of testator, and displace all levies made on the devised property by the creditors of the beneficiary.

**ESTOPPEL: Nonjustifiable Reliance.** A devisee may not be held estopped to renounce a devise because a judgment creditor has incurred expense on the *assumption* that the devisee would *accept* the devise.
2

**APPEAL AND ERROR: Notice of Appeal—Party Without Interest.**
3    A devisee who has made a definite and positive *renunciation* of a bequest need not be served with notice of appeal, in a proceeding wherein a judgment creditor of devisee's was seeking to subject the devise to the satisfaction of his judgment, while an intervener was laying claim to the renounced devise, as remainderman.

*Appeal from Jones District Court.*—MILO P. SMITH, Judge.

OCTOBER 2, 1920.

OPINION ON REHEARING MARCH 14, 1922.

ACTION in equity, to subject property to the payment of a judgment. The facts are stated in the opinion. There was a decree in the court below for plaintiff, and intervener appeals.—*Reversed.*

*Herrick & Reed* and *C. J. Cash,* for appellant.

*C. J. Lynch* and *C. B. Paul,* for appellees.

PER CURIAM.—I.  This is an action in equity, to subject the income from a trust estate created by the will of Ella O. Stover, deceased, in favor of her brother Lewis D. Osborne, to the payment of a judgment against him in the sum

1. WILLS: rights and liabilities of devisees: renunciation of devise.

of $34,017.49.. Ella O. Stover died testate April 9, 1915.' By her will she devised an undivided one third of her property, real and personal, to the Schoonover Trust Company, of Anamosa, Iowa, for the use and benefit of Lewis D. Osborne and Genevieve Osborne, his daughter, with full power on the part of said trustee to sell, convert, invest, and reinvest the said estate, and to receive and collect the income and principal thereof.  The will then directs the trustee to pay one half of the net income from said estate semiannually to Lewis D. Osborne, and the remaining one half to Genevieve D. Osborne, so long as they, or either of them, shall live.  The remainder is devised . to the heirs of Genevieve Osborne.

The judgment owned by plaintiff was obtained many years prior to the death of Ella O. Stover.  Testatrix, at the time of her death, was seized of considerable real property.  Some time thereafter, partition proceedings were begun by her husband against the Schoonover Trust Company, which was also the executor of her estate, and on a stipulation by the parties, the real property was sold, and the proceeds turned over to the trustee.  On April 10, 1915, the day following that on which testatrix died, an execution was issued and levied upon the interest of Lewis D. Osborne in her estate.  The will was admitted to probate in May, 1915, the exact date not appearing in the abstract. On May 19, 1915, plaintiff commenced this action in equity, setting up in her petition the interest of Lewis D. Osborne in the estate of his sister, and asking that her judgment be established as a lien against such interest, and that same be applied in payment and satisfaction thereof.  Original notice of the commencement of this action was served upon the Schoonover Trust Company on May 20th, and upon Lewis D. Osborne, May 24, 1915.  On September 14, 1915, the defendant Lewis D. Osborne appeared by counsel, and was given 15 days to plead.  Later, this time was extended to October 6, 1915.  On October 29, 1915, he filed answer, disclaiming any interest in

the property sought to be subjected to the payment of plaintiff's judgment, and averred that prior thereto he had, in a written instrument, filed in probate, renounced the bequest made by the will of his sister in his favor. The written renunciation was filed in probate October 16, 1915.

On November 9, 1915, W. D. Sheean was appointed guardian of Genevieve Osborne, who was a minor, and on January 3, 1916, filed a petition in intervention herein on behalf of his ward, setting up the renunciation by Lewis D. Osborne of the bequest, and alleging that same passed under the will to her, and asking that her right be decreed thereto. To this petition in intervention, plaintiff filed answer in three divisions, alleging acceptance of the bequest by Lewis D. Osborne; that his pretended written renunciation was filed after the execution was levied and became a lien upon his interest in the estate; and that same was void and without effect, as against plaintiff. Plaintiff also set up a plea of estoppel.

The substance of the plea of estoppel is as follows: That the will of Ella O. Stover was admitted to probate in May, 1915; that, on May 24th, plaintiff's lien upon the interest of Lewis D. Osborne therein attached thereto; that, at the time of the levy of said execution and the commencement of this action, plaintiff indulged and relied upon the presumption that, as the provisions of the will were favorable to him, Lewis D. Osborne had accepted, or would accept, the same; that the said Osborne made declarations recognizing and accepting the provisions of said will, and by his acts and conduct evinced his acceptance thereof; that, well knowing that plaintiff was proceeding in reliance upon the presumed acceptance of the provisions of the will, Lewis D. Osborne permitted the proceedings to continue for a period of six months, knowing that plaintiff was incurring expense preparing the case for trial; and that during said time Osborne employed counsel, and at the September term of court, appeared and obtained an extension of time in which to file answer; that he made no attempt to renounce the bequest until in October, 1915; and that the said renunciation was for the sole purpose of defrauding and defeating plaintiff in the enforcement of his lien, and was collusive for that purpose.

Plaintiff further alleged that she would not have incurred

large expense, had it not been for her reliance on the conduct of Osborne and the matters and things set forth in this division of her answer, and that, by reason thereof, the said Osborne was precluded and estopped to renounce the said bequest, as against the claims and lien of appellee.

The above matters are not pleaded as an estoppel against appellant, nor could they so operate. If, however, Lewis D. Osborne estopped himself from renouncing the bequest, as against the lien of appellee's judgment, then her claim is paramount and superior to any claim by appellant, as guardian of Genevieve Osborne thereto.

It is universally presumed, from the beneficial character thereof, that a legatee will accept a bequest to him, if no obligation or burden is imposed upon him by reason of such acceptance. The rule that a legatee may reject or renounce a bequest made for his benefit, even without casting a burden upon him, is quite as universally recognized as that of presumed acceptance. The more difficult question here is: Did the renunciation of Lewis D. Osborne, evidenced by the written instrument filed in probate after the levy of the execution and the commencement of this action to subject his interest in the trust estate to the payment of appellee's judgment, render the levy ineffectual and defeat her claim? Much reliance is placed by counsel for appellee upon our holding in *Shedenhelm v. Cafferty*, 174 Iowa 195. But a careful reading of the opinion in that case reveals a clear distinction between the facts there involved and those with which we are concerned in the case at bar. There was no renunciation in the *Shedenhelm* case, but an attempt, by waiver, to pass the interest of a devisee to the mother. In the case at bar, Lewis D. Osborne filed a definite and positive renunciation of the bequest, both in the probate court and in this action. This renunciation is binding and conclusive upon him: that is, by this act he completely divested himself of any and all interest in the income from the trust estate or of the benefits of the bequest.

Counsel have not called our attention to any case squarely in point. We have held, however, that a renunciation by a devisee defeats the right to the collection of a succession tax. *In*

*re Estate of Stone,* 132 Iowa 136; *In re Estate of Wells,* 142 Iowa 255.

We have been able to find but few decisions in other jurisdictions touching the main question, but with one or two possible exceptions, such as have been brought to our attention, they hold that the right of renunciation is superior to the right of creditors. *Bradford v. Calhoun,* 120 Tenn. 53 (109 S. W. 502); *Bradford v. Leake,* 124 Tenn. 312 (137 S. W. 96); *Strom v. Wood,* 100 Kan. 556 (164 Pac. 1100); *Albany Hospital v. Albany Guardian Soc.,* 214 N. Y. 435 (108 N. E. 812); *Tarr v. Robinson,* 158 Pa. St. 60. The Supreme Court of Tennessee, in *Bradford v. Calhoun,* supra, said:

"The true rule, founded upon principle, is that it is optionary with the devisee to accept the devise, however beneficial it may be to him; and when he elects to renounce, before any act on his part indicating an acceptance, his renunciation shall relate back, and will be held to have been made at the time of the gift, and will displace any levy of creditors that may in the meantime have been made. Surely, that principle should apply to this case, since Sneed renounced the devise on the day that the will of his wife was admitted to probate. It is insisted by learned counsel for defendant that this renunciation was made for the purpose of defeating the collection of the defendant's judgment, or, if not, it was in effect a voluntary conveyance, and void as against existing creditors. As it was optionary with Sneed to accept or renounce, it is immaterial what his motives were, so long as there is no collusion with the remaindermen or residuary devisees, by which he fraudulently receives a benefit for his renunciation; and there is no proof of this. The renunciation is not a voluntary conveyance, void as against existing creditors, because, when he has properly renounced, the renunciation relates back to the date of the gift; and, as he has never accepted the gift, he has had nothing that could be made the subject of a voluntary conveyance."

All of the courts hold that the renunciation, when filed, relates back to the time when, under the law, the will became effective. *Albany Hospital v. Albany Guardian Soc.,* supra; *Bradford v. Leake,* supra; *Strom v. Wood,* supra.

The presumption of acceptance does not operate to vest

title to the devised estate in the beneficiary, and is conclusively overcome by any act amounting to a binding renunciation thereof.  Renunciation is not equivalent to a conveyance by the debtor, for the purpose of defeating the claims of creditors, nor is the motive that prompted it material, in the absence of collusion or fraud.  By renouncing the bequest, the beneficiary is deprived of any interest in the subject-matter thereof, and nothing passes to him upon which an execution could be levied or made a lien.  Creditors have no right, nor courts jurisdiction, to compel acceptance, or to prevent the beneficiary from renouncing or rejecting a gift.  *Robertson v. Schard*, 142 Iowa 500; *Bains v. Globe Bk. & Tr. Co.*, 136 Ky. 332 (124 S. W. 343); *Harding's Admr. v. Harding's Exr.*, 140 Ky. 277 (130 S. W. 1098).

But two cases have been brought to our notice which hold contrary to those cited supra.  One of these is *In re Buckius' Estate*, 17 Pa. Co. Ct. 270, in which it was held that the lien of an attachment upon the interest of a legatee is superior to his right to waive or renounce the gift.  In view, however, of the more recent holding in *Tarr v. Robinson*, supra, we assume that the doctrine of the *Buckius* case does not now prevail in Pennsylvania.  The writer of the opinion in *Stebbins v. Lathrop*, 4 Pick. (Mass.) 33, suggests the query whether renunciation becomes effective as against creditors, but the proposition was not involved in that case, and the court expressed no opinion thereon.

It is our conclusion upon this point that the right of Lewis D. Osborne to renounce the gift was in no wise interfered with by the levy of the execution or the commencement of this action.  The record is devoid of any proof tending to show collusion or fraud.

II.  But it is further argued by appellee that Osborne estopped himself from renouncing the bequest against the claims asserted by appellee, and that, whether the facts pleaded in fact constituted a defense to appellant's claim or not, the plea was not assailed by motion or demurrer, and that, as it is supported by evidence, it became the law of the case, and therefore a complete defense.  It will be observed that the execution was levied

2. ESTOPPEL: non-justifiable reliance.

the next day after testatrix died, and that this action was commenced in May, 1915, the month in which the will was admitted to probate. The date on which the will was probated is not shown, but from the celerity with which the execution was issued and levied, we may fairly assume that the petition was filed not many days after the will was probated. Surely, Osborne did not estop himself by failing to renounce the bequest prior to the funeral of testatrix, or the admission of the will to probate. The record does not disclose what, if any, expense appellee incurred after the petition was filed, nor should her claim that she was misled and induced to incur expense in reliance upon that well known trait of human nature from which the law raises a presumption that one, when offered a valuable gift, will accept it, be accorded serious consideration. Her attitude was hostile to the defendant from the start, and affords some justification for the presumption that she was proceeding promptly for the purpose of making renunciation by Osborne impossible, rather than that she was being misled and induced to incur expense in reliance upon his conduct. The evidence does not show that Osborne made declarations that he intended to accept the bequest, but, on the contrary, it tends to show that he told the attorney for the trustee, shortly after his sister's death, that he did not intend to accept the provisions of the will. The record contains no evidence tending to show that appellee relied upon any declarations or conduct of Osborne's, or that she incurred any expense because of his failure more promptly to publicly declare his intention to renounce the gift. The record is wholly barren of proof tending to show acceptance. Whether the facts pleaded, if proven, were sufficient to constitute an estoppel, we have no occasion to decide. Manifestly, the record does not disclose facts from which an estoppel may be inferred.

III. Nor is the rule that the defense of estoppel must be held good, because the answer was not assailed by motion or demurrer in the court below, applicable to the facts of this case, for the reason, if none other, that the same was not established by the evidence. The answer alleged that Osborne, by his declarations and conduct, accepted the provisions of the will. The evidence wholly fails to show any declara-

tions by him inconsistent with his act in renouncing the gift. He was not bound at his peril to inform appellee of his intention. It was entirely optional with him whether he would accept the provision made for him by his sister for his benefit, and permit it to be applied upon appellee's judgment.. She could do nothing to control his discretion in the matter. Levying an execution upon the property devised could not avail the appellee, unless her debtor finally accepted the bequest. Surely he was not bound, on account thereof, to accept.

The evidence wholly fails to support the plea of estoppel, and appellee cannot, therefore, take advantage of the failure of appellant to assail the same by motion or demurrer.

IV. The only remaining proposition requiring consideration is appellee's challenge to the jurisdiction of the court, upon the ground that no notice of appeal was served upon Osborne.

3. APPEAL AND ERROR: notice of appeal: party without interest. The necessity for service of notice of appeal on all proper parties is so imperative that it is to be regretted that there is ever any occasion to raise the question of jurisdiction of this court because of the want of such service. Upon a former submission of this case, the appeal was dismissed upon this ground. *Schoonover Trust Co. v. Osborne,* 179 N. W. 157. After the filing of the written renunciation by Osborne in probate, and by way of answer in this case, he became a nominal party only, and without interest in the result of the appeal. It is urged by appellee that, in the event of reversal, the judgment against him would not be satisfied; whereas, if it were affirmed, he would be entitled to credit or credits thereon. By voluntarily releasing his claim to the bequest and failing to make a defense in the court below, he waived and forfeited all interest in the subject-matter of the controversy. He will be affected in no way by the result of this appeal. He could not consistently have contended in this court that the income from the trust estate should be credited on the judgment. This is the contention of appellee. The failure to serve the notice of appeal upon him did not deprive this court of jurisdiction to determine the appeal. So far as there may be a possible question as to whether the entire income from the trust estate should now be paid to appellant, as guardian of

Genevieve Osborne, it is left to the court below to decide.   Appellee has no interest in the decision of this question.

For the reasons already stated, the judgment of the court below is—*Reversed.*