## In re MEIBURG.

### No. 2807.

District Court, N. D. Iowa, W. D.

Nov. 28, 1932.

O. J. Reimers, of Rock Rapids, Iowa, for petitioners.

Simon Fisher, of Rock Rapids, Iowa, for respondent.

SCOTT, District Judge.

The above-entitled matter came before the court on the 3d day of November, 1932, on the petition of Henry E. Meiburg and John H. Reimers for review of an order made and entered on the 4th day of May,

1932, by H. S. Snyder, referee in bankruptcy, wherein said referee finds that the bankrupt and her husband had been engaged in a joint farming adventure, and jointly owned a large amount of live stock and farm machinery, and required the same to be scheduled, and that an order of sale thereof be entered. The order, so far as it pertained to the personal property, affected only Henry E. Meiburg, husband of the bankrupt; the remaining part of the order related to a quarter section of land owned by the petitioner John H. Reimers, father of the bankrupt, which land had been the subject of a devise by said John H. Reimers to the bankrupt in a joint will made by him and his deceased wife in her lifetime. The order of the referee finds that John H. Reimers had a life estate only in this land, and that the bankrupt was the owner of the remainder, and required the same to be scheduled as assets of the bankrupt, The evidence without controversy shows that Meta E. Meiburg filed a voluntary petition in bankruptcy on the 18th day of February, 1932, and was adjudicated bankrupt on the 19th. She gave her occupation as a housewife, and scheduled only a small amount of personal property, including household goods, automobile, 1,000 bushels of corn, and 1,000 bushels of oats. She also scheduled a lease for the year 1932 on two quarter sections of land, being the northwest quarter of section 6, township 98, range 45, and the northeast quarter of section 1, township 98, range 46, in Lyon county, Iowa. In addition, she scheduled a quarter section of land incumbered by first mortgage in the sum of $13,982, and a second mortgage in the sum of $7,000, with a sum due as rent thereon in the sum of $850. There were some other items not material to be mentioned.

Bankrupt and her husband did not live upon the quarter section of land owned by her, but they had for the past eleven years resided upon the farm of bankrupt's father, John H. Reimers, with respect to which bankrupt scheduled the lease for the coming year. When bankrupt and her husband were married, bankrupt's husband, Henry E. Meiburg, had a considerable amount of personal property in the form of horses, cattle, and farming implements, but the evidence fails to show that the bankrupt had any personal property at that time. Bankrupt's husband and bankrupt farmed for a number of years on different farms prior to moving onto the farm of bankrupt's father eleven years before the adjudication of the bankrupt. The husband had accumulated considerable personal property. He had made

a business of raising cattle, horses, and live stock, and feeding and selling the same. About the time bankrupt and husband moved onto her father's farm, the exact time or year does not appear, bankrupt's husband became involved in the ownership or operation of an elevator, with whom the record does not show, but he testified that a judgment was obtained against him, the amount or date of which does not appear in the evidence. When the elevator controversy developed, according to the testimony of bankrupt and her husband, in fear that this judgment would be enforced against the husband's property, it was agreed that bankrupt should take the lease of the farm on which they were living from her father in her name, but that the husband should then own all of the personal property, should continue to farm the land, but should give bankrupt enough money to pay the rent. It also appears without controversy that, when trouble over the elevator came, whether before or after the judgment does not appear, bankrupt's husband carried his bank account in bankrupt's name, and this custom prevailed for a considerable number of years and up to the time bankrupt was adjudicated. It may, and I think must be conceded that the taking of the lease in bankrupt's name was because bankrupt and her husband conceived that by so doing the lease and crop raised would be out of the reach of the judgment creditor. I think it must also be conceded that the same motive induced the carrying of the bank account of the husband in bankrupt's name. There is some testimony of petitioner, Henry E. Meiburg, given in response to leading questions, tending to imply that he and his wife were jointly interested in the farming venture, but he explains later that what he meant was that she was interested with him as his wife. The evidence is without controversy that bankrupt contributed nothing in the shape of money or property to the husband's farming venture, except that the lease of the farm was taken in her name. In other respects she was a housewife and nothing more. The husband operated the farm as completely as farmers usually do, and annually gave the bankrupt the money to pay her father for the rent of the land. Whether this was by turning over cash or by check on the bank account carried in bankrupt's name does not definitely appear.

Now it may be conceded that the bank account of the husband carried in the wife's name could have been taken for the wife's debts, and that the husband by reason of

the fraudulent purpose of the transaction would be estopped from claiming the same as against the wife's creditor. But no creditor of the wife ever attempted to seize upon the bank account, and, so far as the evidence shows, the bank account no longer exists. It may also be conceded that the leasehold interest in the two quarter sections of land is liable for debts of the bankrupt, if it has any value; but bankrupt has scheduled become mature, there is great doubt, although that. As to whether a creditor of the bankrupt could have taken the grain raised upon the land by her husband and which had bankrupt, and her husband seem to have thought that probable, and bankrupt lists the corn and oats on hand and the husband raises no questions over those items. So, for the purpose of this review, they are not considered.

The question now presented on this state of facts is: Assuming that the transactions of the bank account and the taking of the lease in the wife's name were fraudulent in their character and by reason thereof were made liable for bankrupt's debts, may we go a step further and say that these facts raise a presumption that the bankrupt became a half owner of all of the personal property of the husband, and that a half of all of this personal property may be taken from him by the bankrupt's trustee? I think this question must be answered in the negative. However reprehensible the conduct of Henry E. Meiburg may have been in endeavoring to defeat the elevator judgment, there is nothing in the record that such acts had any effect upon the creditors of his wife, or that it tends to raise any equity in favor of the bankrupt's creditors in the personal property of the husband which he did not convey, but always kept in his own name.

It is true the referee finds as a basis for the order that the husband and wife were engaged in a joint venture, and upon this theory held that she is an owner of a one-half interest of all of the farm property, except such as are remnants of the original stock of the husband brought onto the farm. I think the evidence taken as a whole, in the light of all of the circumstances, does not support such a theory or finding, and that it would serve no equitable principle to subject the petitioner's property to the payment of the creditors of the bankrupt. I think the referee erred in requiring the scheduling of the personal property of petitioner Henry E. Meiburg as joint property of petitioner and bankrupt.

The branch of this controversy in which petitioner John H. Reimers is interested is that part of the order requiring the scheduling of the northeast quarter of section 1, aforesaid. John H. Reimers and his deceased wife in her lifetime made a joint will. Presumably the wife had some estate in her own right, because the record shows that her estate was administered upon. John H. Reimers, however, the husband, was the owner of the quarter section of land in controversy and still is. The joint will among other things provided:

"Par. 5. After the death of both of us we jointly will and bequeath to our daughter, Meta Meiburg, the northeast quarter of Section one township 98, North of range 46 west of the 5th P. M. in Lyon County, Iowa, to have and to hold the same as her absolute property forever, However, if there should be any mortgage upon said real estate at the time of the last survivor, the same Meta Meiburg is to assume and pay the same no matter what the amount thereof or the date when due."

The referee seems to have been of opinion that the above paragraph of the will vested in the bankrupt in præsenti on the death of the maker first deceased, an alienable title which would pass to the bankrupt's trustee. I cannot reach this conclusion, and therefore hold that the referee erred in that portion of the order. Counsel for the trustee, and presumably the referee, stress the decision of the Supreme Court of Iowa in Baker v. Syfritt, 147 Iowa, 49, 125 N. W. 998, as upholding their contention. In Baker v. Syfritt, the husband and wife made a joint reciprocal will reciting and declaring that they held all of their property jointly and devised to the survivor the entire use of the property for the life of the survivor. The will then provided: "After the death of the survivor of us, as aforesaid, it is our wish that the property on McPherson Avenue, in the city of Council Bluffs, Iowa, (describing it) should become the property of Belle Syfritt, of Kansas City, Missouri, daughter of our niece, Belle Burton, during her life, and we do therefore devise the property aforesaid to her, the said Belle Syfritt, for her use and benefit during the period of her natural life with remainder at her death to her children." Mrs. Baker died first, and her will was probated, and the husband took advantage of the provisions of the will, but

later remarried, the subsequent wife surviving him, and on his death such wife claimed a distributive share in the land under the statute of Iowa as surviving spouse. The holding of the Supreme Court of Iowa in Baker v. Syfritt, was that the mutual and reciprocal will constituted a binding contract and covenant and that the survivor took the devise in trust for the purposes described in the will, and that the land, the subject of the bequest, was not subject to a dower right or distributive share of a subsequent wife. The decision, I think, makes clear that the reciprocal covenant of the will established a trust to be executed and go into effect on the death of the survivor, and that the beneficiary named at that time came into the benefits of the trust. I think this holding falls far short of sustaining the contention that the will vested an alienable estate in præsenti, which would render the object of the trust liable to absolute defeat.

This court in Re Lage, 19 F.(2d) 153, decided a case very similar to the one at bar, and what I said in that case I think equally applicable here.

The case at bar I think, however, is much stronger against the contention of the trustee than in Baker v. Syfritt, or In re Lage. In the case at bar, the express language is: "After the death of both of us we jointly will and bequeath to our daughter," etc., indicating I think an intent to restrict the taking effect of the devise until the death of the survivor, and even then conditionally as the subsequent language of the will indicates. After reciting that the beneficiary on the death of the survivor shall "hold the same as her absolute property forever," the will proceeds: "However, if there should be any mortgage upon said real estate at the time of the last survivor, the same Meta Meiburg is to assume and pay the same no matter what the amount thereof or the date when due." Thus it would appear that the intent of the testators was that the fee owner, during their respective lives, should be at liberty to incumber the devised property without limit, and that the devisee should assume and pay the incumbrance as a condition of the devise. It appears from the record that this particular tract of land has been and is now incumbered by mortgage in the sum of $10,000, and the right to further increase the incumbrance is not limited. It is elementary I think that power to mortgage without limit involves the power to dispose of, and is inconsistent with the idea that the title to the subject is vested in some one other than the holder of the legal title. As pointed out in Re Lage, it is also the holding in this state that a devisee or legatee may renounce a bequest upon the death of the testator, even though the effect of such renouncement may destroy the hopes and prospects of creditors, citing, Schoonover v. Osborne, 193 Iowa, 474, 477, 478, 187 N. W. 20, 27 A. L. R. 465.

I conclude that the order of the referee is erroneous and should be and is reversed in its entirety. An exception is reserved to the trustee.