In the Matter of the Accounting of S. BRUCE WILSON et al., as Executors of KATE B. WILSON, Deceased, Respondents. MORRIS ORENSTEIN, as Receiver of LESLIE B. WILSON, Appellant; ROBERT B. WILSON, as Administrator of the Estate of LESLIE B. WILSON, Deceased, Respondent.

Argued October 4, 1948; decided January 13, 1949.

*William F. Wund* and *Ernest M. Morrison* for appellant. I. The judgment debtor's renunciation of his legacy to defeat his creditor after the receiver's title had attached and in violation of the restraining orders and the Debtor and Creditor Law of this State, was void and ineffective. (*Albany Hosp.* v. *Albany Guardian Soc.*, 214 N. Y. 435; *Matter of Waring*, 293 N. Y. 186; *Burritt* v. *Silliman*, 13 N. Y. 93; *Matter of Mahlstedt*, 140 Misc. 245, 234 App. Div. 891; *Matter of Matthiessen*, 175 Misc. 466; *Matter of Merritt*, 155 App. Div. 228; *Matter of Wolfe*, 89 App. Div. 349; *Matter of Clarkson*, 137 Misc. 741; *People* v. *Flanagin*, 331 Ill. 203; *Crane* v. *Beecher*, 6 N. Y. S. 225; *Matter of Trent*, 159 Misc. 822; *Hallett* v. *Thompson*, 5 Paige Ch. 583.) II. In the case of a beneficial devise or legacy, uncoupled with any condition, there is a presumption of acceptance. (*Lehr* v. *Sweitzer*, 213 Iowa 658; *McGarry* v. *Mathis*, 226 Iowa 37; *Bradford* v. *Calhoun*, 120 Tenn. 53; *Sanders* v. *Jones*, 347 Mo. 255; *Matter of Howe*, 112 N. J. Eq. 17; *Strom* v. *Wood*, 100 Kan. 556; *Crumpler* v. *Barfield*, 114 Ga. 570; *Oliver* v. *Wells*, 254 N. Y. 451.) III. A legacy before renunciation constitutes a property right, and title thereto passed to the receiver. (Civ. Prac. Act, §§ 807, 808; *Herlihy* v. *Watkins*, 252 App. Div. 605; *Hubbard* v. *Lewis Co.*, 128 App. Div. 416; *Matter of Ewald*, 174 Misc. 939; *Monahan* v. *Fitzpatrick*, 16 Misc. 508; *Matter of Trent*, 159 Misc. 822; *Hallett* v. *Thompson*, 5 Paige Ch. 583; *Tompkins* v. *Fonda*, 4 Paige Ch. 448; *Payne* v. *Becker*, 87 N. Y. 154; *Matter of Haase*, 174 Misc. 42.)

*Albert Ritchie* for respondents. I. The legacy to Leslie B. Wilson never vested in him and hence the receiver got no title thereto. (*Burritt* v. *Silliman*, 13 N. Y. 93; *Albany Hosp.* v. *Albany Guardian Soc.*, 214 N. Y. 435; *People* v. *Flanagin*, 331 Ill. 203; *Bradford* v. *Leake*, 124 Tenn. 312; *McGarry* v. *Mathis*, 226 Iowa 37; *Carter* v. *Carter*, 63 N. J. Eq. 726; *Hidden* v. *Hidden*, 103 Mass. 69; *Matter of Wolfe*, 89 App. Div. 349, 179 N. Y. 599; *Matter of Merritt*, 155 App. Div. 228; *Matter of Mahlstedt*, 140 Misc. 245, 234 App. Div. 891; *Matter of Matthies-*

*sen,* 175 Misc. 466; *Matter of Kalt,* 16 Cal. 2d 807; *Matter of Lansing,* 182 N. Y. 238; *Helvering* v. *Grinnell,* 294 U. S. 153; *Matter of Van Alstyne,* 207 N. Y. 298.) II. The question of acceptance of the legacy by the legatee is not before the court. There was, however, no acceptance. (*Oliver* v. *Wells,* 254 N. Y. 451; *Matter of Phipps,* 77 Hun 325, 143 N. Y. 641; *Matter of Zefita, Countess de Rohan-Chabot,* 167 N. Y. 280; *Matter of Wolfe,* 89 App. Div. 349; *Matter of Meyer,* 137 Misc. 730; *Matter of Howe,* 112 N. J. Eq. 17; *Matter of Matthiessen,* 175 Misc. 466; *Smillie* v. *Quinn,* 90 N. Y. 492; *Jackson* v. *Tallmadge,* 246 N. Y. 133; *Friede* v. *National City Bank,* 250 N. Y. 288.) III. The renunciation by the legatee did not violate the injunction order or the Debtor and Creditor Law. (*Schaefer* v. *Fisher,* 137 Misc. 420; *Burritt* v. *Silliman,* 13 N. Y. 93; *Matter of Meyer,* 137 Misc. 730.)

CONWAY, J. The facts presented for our consideration are not in dispute. They are established by court documents, exhibits and a stipulation of the parties to a statement of facts proven pursuant to rule 230 of the Rules of Civil Practice. In 1929, one Maria Eckerlein recovered judgment against Leslie B. Wilson, (hereinafter referred to as debtor) the now deceased respondent. Thereafter, in March of 1945, his mother, Kate B. Wilson, died leaving a will and codicil, which were probated in April, 1945, by which he received as a legacy one third of her residuary estate. The remaining two thirds were divided between his brother and sister. Only personalty is here involved.

Some ten months after the death of the debtor's mother and on January 10, 1946, a third party order in supplementary proceedings, in connection with the judgment mentioned, was served upon his brother as an executor. It was returnable on January 29th, and contained an injunction forbidding transfer or disposition of any property or debts due the debtor. On his examination the executor testified that the value of the debtor's legacy was approximately $12,000.

Pursuant to an order in supplementary proceedings issued on January 12th, returnable on January 29th, and served personally, the debtor was examined. That order restrained him from making or suffering any transfer or other disposition of, or interference with any of his property. Two questions and

answers may be quoted as indicating quite clearly that at that time, ten months after the decease of his mother, he had accepted the legacy in his own mind and had no thought or intention of rejecting or renouncing it:

" 111 Q. By the terms of the Last Will and Testament and Codicil of your deceased mother, Kate B. Wilson, what interest have you in her Estate? A. One third of the residuary estate."

" 123 Q. What do you figure and compute at this time, approximately, that there is still due to be paid to you by the executors of the estate, in settlement and payment of your interest in the estate? A. I have no idea what it will amount to."

He further testified that neither his brother nor his sister (the two executors) had made any payments to him on account of his interest in the estate and that he had made no assignment of such interest. At the conclusion of the examination on January 29th, a receiver was appointed whose title to the debtor's personal property was fixed in the order of his appointment as January 17th.

On February 4th, the debtor filed in the Surrogate's Court a paper purporting to be a renunciation of his legacy. By it he said he did thereby " renounce and decline to accept the legacy or beneficial interest bequeathed to me * * *." The renunciation purported to be dated and acknowledged on the 29th day of January, six days before filing. Counsel has conceded, however, that it was delivered by the debtor subsequent to his examination.

In this proceeding by the executors of the will of Kate B. Wilson, deceased, for an accounting and other relief, the courts below have upheld the validity of the judgment debtor's purported renunciation of his legacy while the supplementary proceedings were pending.

We all agree that the debtor had a reasonable time, after his mother's death and the probate of her will, within which to renounce his legacy. During such period the presumption was that he would accept it when he had the opportunity since it was beneficial to him, at least where there were " no rights or new considerations intervening the probate of the will and the refusal or acceptance by the devisee " or legatee. (*Albany Hosp.* v. *Albany Guardian Soc.*, 214 N. Y. 435, 443.) However, if a reasonable time elapses during which a legatee

does nothing one way or the other, the legacy is his absolutely. A legatee of an unconditional legacy need never formally accept the legacy. If he does not wish it, he must affirmatively renounce it. So long as it is not needed for creditors of the deceased or for administration expenses, no one has the power to deprive him of it. He may not rid himself of his legacy except by his own *affirmative act*.

It is not enough, therefore, to have only in mind• that, if the debtor Wilson renounced his legacy within a reasonable time, such renunciation would relate back to the date of the death of his testatrix. Under the circumstances here presented, the equally, if not more important question is, did the debtor have any property right in the legacy during the passage of the reasonable time allowed him for renunciation. As we have seen if nothing was done, the legacy was his. If he died it would pass to his distributees or creditors — even in a case where he did not know of its existence. He could allow a reasonable time to elapse or, during its passage, could evidence, by word or deed, acceptance or renunciation. Renunciation is a word of art at common law and was quite important when realty and title thereto was involved as is made clear in *Albany Hosp.* v. *Albany Guardian Soc.* (*supra*). As to personalty, however, it is no longer a matter of common law solely but, in this State at least, a matter of statute. We speak of a vested legacy as distinguished from a contingent one and as vesting immediately upon the death of a testatrix. (2 Jessup-Redfield's Law and Practice in the Surrogates' Courts [3d ed.], § 929.) It is assignable. By statute ('Civ. Prac. Act, § 916) it may be reached by levy of attachment. Section 916 makes no qualification in its language as to whether a legacy has been accepted or renounced. It treats the legacy as belonging to the legatee. The presumption that one will accept is assumed in that statute as one of existing fact. If the legacy is renounced within a reasonable time after decedent's death, it is true that the renunciation relates back to the date of death and that it may then be said that there never was a legacy but the question remains as to what a legatee has during the passage of such reasonable time. It may be considered as a gift which may be rejected within a reasonable time or even the offer of a gift which may be rejected within a reasonable

time. In either event, during that reasonable time, he has a chose in action and that is personal property. (General Construction Law, § 39.) In section 39 of the General Construction Law, personal property is broadly defined and includes " everything, except real property, which may be the subject of ownership " and specifically " things in action ". It is that which is vested, assignable and attachable. (See Decedent Estate Law, § 146.) Thus, the word " renunciation " is defined in Bouvier's Law Dictionary as " The act of giving up a right." It is important at the outset to determine that the debtor here had such a property right because, having it, he could be forbidden by restraining order to rid himself of it as was done here. There was then property to which the provisions of article 45 of the Civil Practice Act could apply.

As we have said, the debtor allowed ten months to pass after the death of his mother without taking any action. What is a reasonable time to be allowed for renunciation must always depend upon the facts of the particular case. We deal with this record and our interpretation of it. The acceptance of a devise or bequest being a question of fact (*Oliver* v. *Wells,* 254 N. Y. 451, 460–461) the time within which a devisee or legatee may be required to act to rebut or overcome the presumption of acceptance is a reasonable time which will vary with the circumstances of each case. Since the Surrogate's Court historically and by statute (Surrogate's Ct. Act, § 40) is an equity court and equity and good conscience require that a man pay his contract obligations, the time allowed for action should be shorter when the effect of renunciation will be to prevent satisfaction of a judgment in whole or in part. We had this in mind in *Oliver* v. *Wells* (*supra,* pp. 459–460), when, in discussing the question of an election to take a conditional bequest, we said (CARDOZO, Ch. J.): " The general principle is that election must be made within a time that is *equitable* in the light of all the circumstances. This time may be very long, if injury to others will not result from the delay, and by the same token very short if the failure to act promptly may work injury or hardship (1 Pomeroy Equity Juris. [4th ed.] § 513; Halsbury Laws of England, title Equity, §§ 141, 144, and cases there collated)." (Emphasis supplied.)

If the debtor here had assigned his legacy, that would have disclosed his acceptance by act. He could also evidence by

words that he had accepted it by disclosing his state of mind and prior mental acceptance of it. That he did in his answers when examined. We need not here determine whether a surrogate, presiding as he does in a court of equity, has the competence and duty to direct a judgment debtor to accept a legacy in order that his creditor may be paid. Thus in *Hallett* v. *Thompson* (5 Paige Ch. 583), a legacy was bequeathed but the executor was directed to retain it and put it at interest for the benefit of the legatee for life unless the legatee should by a sealed instrument require the payment of the legacy to him. The testator had expressly declared that neither the legacy nor the income should be liable to the legatee's creditors. The Chancellor said (p. 586): "Independent of any statutory provisions, therefore, I have no doubt that it would be competent for this court, and would also be the imperative duty of the court, to compel the defendant Thompson to execute this beneficial trust power, so as to enable the complainant to obtain payment of the legacy; to be applied in satisfaction of his judgment, as far as it would go." (See, also, 43 Yale L. J. 1030.)

It is sufficient in this case to say that the debtor had a property right in the legacy, that he was enjoined from disposing of it and that the uncontradicted and stipulated proof established as matter of law both acceptance of it by passage of time and by word and conduct so that his power of renunciation had been lost to him prior to his attempt to exercise it.

The order of the Appellate Division should be reversed, with costs and the decree of the Surrogate's Court modified by directing that the residuary share payable to Leslie B. Wilson, the distributee, be paid to the receiver to be applied toward satisfaction of the judgment and interest.

FULD, J. (dissenting). By its decision, the court is holding that no conclusion is possible on this record other than that the debtor accepted the legacy. I cannot agree; in my view, there was sufficient evidentiary basis for the determination made by the Surrogate's Court and unanimously affirmed by the Appellate Division.

As presented in the court's opinion, the case poses one simple question: did the legacy vest in the debtor on or by February 4, 1946, the date on which he filed a renunciation of the bequest to him?

The underlying law is clear. Since a legacy or devise is deemed an offer to the named beneficiary — which he may accept or refuse — and not a transfer, title to the gift passes and vests only upon the beneficiary's acceptance. (See *Matter of Waring,* 293 N. Y. 186, 189; *Albany Hosp.* v. *Albany Guardian Soc.,* 214 N. Y. 435, 441; *Burritt* v. *Silliman,* 13 N. Y. 93, 96; *Matter of Wolfe,* 179 N. Y. 599, affg. 89 App. Div. 349; *Matter of Mahlstedt,* 140 Misc. 245, 253; *Brown* v. *Routzahn,* 63 F. 2d 914, 917, certiorari denied 290 U. S. 641; *People* v. *Flanagin,* 331 Ill. 203; *Schoonover* v. *Osborne,* 193 Iowa 474; *Bradford* v. *Calhoun,* 120 Tenn. 53; *Matter of Meiburg,* 1 F. Supp. 892, 895; see, also, Restatement, Property, § 2; 43 Yale L. J. 1030.)

Under this settled rule, it is the beneficiary and he alone who determines whether he will own the property, for, as this court remarked nearly a century ago, " the law does not compel a man to accept an estate, either beneficial or in trust, against his will ". (*Burritt* v. *Silliman, supra,* 13 N. Y., at p. 96; see, also, *Schoonover* v. *Osborne, supra,* 193 Iowa 474, 479.) And, since an acceptance is prerequisite to the vesting of the gift, it follows that a prior renunciation will be effective to prevent the passage of any interest to the beneficiary, even though that renunciation was manifestly designed to avoid some burdensome condition attached to the gift by the testator (see *Winquist* v. *Doering,* 135 Kan. 92), to escape the incidence of inheritance tax (see *Matter of Wolfe, supra,* 179 N. Y. 599, affg. 89 App. Div. 349; *Brown* v. *Routzahn, supra,* 63 F. 2d 914, certiorari denied 290 U. S. 641; *People* v. *Flanagin,* 331 Ill. 203, *supra*; *Matter of Stone,* 132 Iowa 136; *Tax Comm. of Ohio* v. *Glass,* 119 Ohio St. 389), or to deprive creditors, including judgment creditors, of a means of satisfying their claims. (See *Matter of Meiburg, supra,* 1 F. Supp. 892, 895; *Schoonover* v. *Osborne, supra,* 193 Iowa, at p. 477; *Lehr* v. *Switzer,* 213 Iowa 658.) In short, the law does not delve into the motives which dictate the legatee's acceptance or refusal, nor does it, in the absence of fraud or collusion, forbid a choice prompted by selfish reasons.

The power of a legatee to refuse is, then, precisely the same as that of a donee of a gift *inter vivos,* and, of course, it is perfectly evident that, if such a donee refuses to accept the gift, his creditors are completely powerless to compel his acceptance. The mere fact that the gift is provided for by will and that

the donor is dead should not and does not deprive the recipient legatee of his option to reject it, in spite of his creditors. That being so, the decisive question — as already noted — is whether or no there was, prior to the debtor's express renunciation on February 4, 1946, an acceptance of the legacy which disabled him from renouncing it.

Although it is true that a presumption operates in favor of acceptance, that presumption is not conclusive. (See *Matter of Waring, supra,* p. 189; *Albany Hosp.* v. *Albany Guardian Soc., supra,* pp. 440, 443.) As a matter of evidence, it is completely rebutted by an effective renunciation. (See *Albany Hosp.* v. *Albany Guardian Soc., supra,* pp. 441–442; *Defreese* v. *Lake,* 109 Mich. 415, 431; *Gottstein* v. *Hedges,* 210 Iowa 272, 275.) Thus, the presumption fails — and the court agrees to this — whenever there has been a timely and outright disclaimer of the gift, whether formally or informally, in writing or by parol, as long as the disclaimer was not preceded by an acceptance. Since there was in this case an explicit written renunciation, we need but consider whether it was antecedent to acceptance; if it was, all will concede that the renunciation was effective, " that there never was a legacy " (p. 403), and that the debtor took no property under the will.

The courts below have found as fact that there was no acceptance. The majority of this court, however, have decided that the record establishes an acceptance *as matter of law,* and it is from that conclusion that I am impelled to dissent.

As to what constitutes an acceptance, the law is plain. It may be either express, by proof of actual and outright acquiescence, or implied, by inference from the words and conduct of the legatee. There is no claim here that an acceptance was accomplished by explicit acts or words; rather, it is said to be established by " passage of time and by word and conduct " of the debtor, " so that his power of renunciation had been lost to him prior to his attempt to exercise it " (p. 405).

In reaching this conclusion, the court states that " the debtor had a reasonable time, after his mother's death and the probate of her will, within which to renounce his legacy " (p. 402). Loss of his power to refuse a legacy is then predicated upon the passage of some ten months between the probate of the will and the date of the asserted renunciation. While I concede that under

some circumstances a beneficiary may disable himself by unreasonable delay from effectively renouncing a legacy, the present is not such a case. Several decisions in courts of other States, holding that power to renounce may be lost after passage of time — another way of saying that an acceptance had occurred — deal with delays of a far lengthier period than is here involved. In one, for example, the lapse of time was thirteen years (*Crumpler v. Barefield & Wilson Co.*, 114 Ga. 570), in another, five years (*Strom v. Wood*, 100 Kan. 556), and, in a third, several years at least (*Daniel v. Frost*, 62 Ga. 697); and, in all of them, the debtor had been living on the property devised for the entire period involved. In my judgment, the mere lapse of ten months before renunciation does not compel the conclusion of acceptance as matter of law.

And, certainly, such an acceptance is not to be found in the questions and answers from the debtor's examination in supplementary proceedings. All that the legatee there declared was that the will provided a gift in his favor and that he had not received any part of it. In the testimony quoted by Judge Conway (p. 402), I cannot see any more than a simple statement by the debtor that he was named as a legatee in his mother's will, that his share amounted to one third of the residuary estate, and that he was unaware of its exact value. No duty existing to volunteer that he had renounced or planned to renounce his share, the debtor's answers cannot be stretched or strained to spell out an acceptance as matter of law.

Nor may an acceptance be founded upon any theory of " intervening rights and new considerations ". This is not a case where the creditor, in extending credit to the debtor, relied either upon the legacy or upon his debtor's supposed acceptance of it. (Cf. *Daniel v. Frost, supra,* 62 Ga., at p. 707.) There was here no change of position by the creditor, no action to his prejudice in reliance upon any act or conduct of the debtor vis-a-vis the legacy or the debtor's asserted acceptance of it. If the debtor had renounced the gift a day or two after the will was probated, the creditor would have received nothing and could have claimed nothing — and, as I read the opinion, the court makes no contrary suggestion. While the debtor's delay in renouncing and his acknowledgment on the examination that the will named him a legatee may conceivably constitute some

evidence that he had not rejected the gift, those circumstances are insufficient to establish as matter of law that he had accepted it.

The case would, of course, be different if the debtor had entered into a collusive agreement with those who would benefit by his renunciation. (See *Schoonover* v. *Osborne, supra,* 193 Iowa 474; *Bradford* v. *Calhoun, supra,* 120 Tenn. 53, 60.) Suspicion of collusion cannot, however, take the place of evidence; and here there is not the slightest suggestion, much less proof, of collusion or fraudulent agreement among the several beneficiaries.

The order of the Appellate Division should be affirmed.

LEWIS, DESMOND and DYE, JJ., concur with CONWAY, J.; FULD, J., dissents in opinion in which LOUGHRAN, Ch. J., concurs.

Order reversed, etc.