David C. MAPES, Jr.; Nancy Dodds; Mary Gail Hentzen, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 92–15351.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 1993.

Decided Jan. 26, 1994.

David M. Kirsch, San Jose, CA, for plaintiffs-appellants.

Robert L. Baker, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant-appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE,* District Judge.

LEAVY, Circuit Judge:

In this case we are called upon to determine whether a legatee's purported renunciation of his half-interest in an estate precluded the federal government from asserting a lien against that half-interest as the result of the legatee's nonpayment of taxes. The district court held that the tax lien was valid under federal law because the renunciation failed as a matter of state law. We reverse.

## FACTS AND PRIOR PROCEEDINGS

Nell Joyner Mapes died on March 27, 1991, leaving half of her estate to her son, David Mapes, Sr. ("Mapes").[1] At the time of his mother's death, Mapes and his wife owed the federal government nearly $500,000 in back taxes and accrued statutory additions to tax. In order to prevent the government from attaching his half-interest in the decedent's estate, Mapes purported to renounce his rights in favor of his three children by executing a document entitled Renunciation of Devise ("Renunciation"), dated April 2, 1991, and filed with the appropriate court on · May 16, 1991. The government served a Notice of Levy and, later, a Final Demand, asserting a tax lien against any inheritance payable to Mapes and/or his wife from the estate. The estate representative refused to

---

* The Honorable Robert R. Merhige, Jr., Senior District Judge for the Eastern District of·Virginia, sitting by designation.

1. The value of the estate was placed at $452,-723.92, leaving Mapes with a half-interest worth $226,361.96.

honor the levy and demand because of the Renunciation.

Mapes's three children, David C. Mapes, Jr., Nancy Dodds, and Mary Gail Hentzen ("Children"), subsequently filed the instant quiet title action in federal district court, alleging that the government had wrongfully levied on their property. The parties filed cross-motions for summary judgment. The district court denied the Children's motion but granted the government's motion, holding that a tax lien arose under federal law because the Renunciation was ineffective under state law. The Children timely appealed from that ruling. For the reasons which follow, we reverse.

## ANALYSIS

### I

#### *Standard of Review*

The underlying facts are not in dispute, and this appeal turns solely on our interpretation of two statutes, one federal, the other state. We review *de novo* a district court's interpretation and application of federal and state law. *Spain v. Aetna Life Ins. Co.*, 13 F.3d 310, 312 (9th Cir.1993) (federal law); *Smith v. Hughes Aircraft Co.*, 10 F.3d 1448, 1451 (9th Cir.1993) (state law).

#### *Discussion*

The gist of the government's argument is that, as a matter of federal law, two things happened when Mapes's mother died: Mapes acquired a half-interest in her estate, and a tax lien against that half-interest arose in favor of the government. The Children contend that neither of these things happened because, as a matter of state law, the Renunciation prevented Mapes from acquiring a half-interest in the estate and, in the absence of his having inherited anything, there was nothing to which a tax lien could have attached.

■ Most of the government's brief, including the majority of the cases cited therein, is devoted to the proposition that federal law is controlling on the question of whether Mapes had a lienable interest in his mother's estate, and the priority of any such (federal) lien against other interests. While correct as far as it goes, this argument misses the point by begging the fundamental question of whether Mapes had any interest in the property, lienable or not. For the answer to that question we must look to state law, not federal law. *See Federal Deposit Ins. Corp. v. Soderling (In re Soderling)*, 998 F.2d 730, 733 (9th Cir.1993) (while federal law controls with respect to determining status and priority of bankruptcy claim involving community property, state law controls with respect to determining whether party has an interest in that property).

■ We begin our inquiry by examining the relevant section of Arizona's Probate Code. That statute reads, in pertinent part:

A. [An heir] ... may renounce in whole or in part the devolution of an interest in ... property by delivering or filing a written instrument as provided in this section[.]

. . . .

D. ...

1. If an heir ... renounces, ... the interest renounced ... passes as if the person renouncing had predeceased the decedent[.]

. . . .

4. The renunciation relates back for all purposes to the date of death in cases covered by paragraph 1[.]

Ariz.Rev.Stat.Ann. § 14–2801 (Supp.1993) (hereafter, "APC § 2801").

Put simply, APC § 2801 provides that an heir may renounce, in whole or in part, his or her interest in an estate by timely filing with the appropriate court a document in the proper form, and that such renunciation will relate back in time; *i.e.*, it will have the same legal effect as if the heir had predeceased the testator. As the Renunciation was in the proper form and timely filed with the appropriate court, the Renunciation should have had the effect of preventing Mapes from acquiring any interest in the estate.

The question is not so easily answered, however, for "any acceptance of benefits from the property ... made by the person

renouncing ... bars the right [of that person] to renounce as to the property." APC § 2801.E.2. Mapes admittedly drove his mother's Buick home from the funeral and retained possession of the car for nearly a year, during which time the estate paid the insurance on the vehicle. The district court concluded from these facts that Mapes had accepted a benefit from the estate which rendered the Renunciation invalid. While we agree with the district court's approach, we disagree with its conclusion.

Our treatment of this issue is hampered somewhat by the fact that there is a dearth of law on the subject.[2] However, we can seek guidance from the official comments to the 1969 draft of the Uniform Probate Code as modified by the Uniform Disclaimer of Transfers By Will, Intestacy, or Appointment Act of 1973, because APC § 2801 is based thereon. *See Estate of Acord v. C.I.R.*, 946 F.2d 1473, 1474 (9th Cir.1991) (absent a contrary expression of intent from the .Arizona legislature, we will assume that the purposes outlined in the official comments to the Uniform Probate Code were what the Arizona legislature intended).

The official commentary to the relevant section of the Uniform Probate Code states "When a beneficial interest is accepted by a beneficiary, he cannot thereafter disclaim or release it[.] As to what conduct amounts to an acceptance, see *In re Wilson's Estate*, 298 N.Y. 398, 83 N.E.2d 852 (1949)." Unif.Probate Code § 2–801, comment (d), 8 U.L.A. 167–68 (1983) (internal citation omitted).

The *Wilson's Estate* case was a 4–2 decision of the New York Court of Appeals in which the majority held that a legatee's attempted renunciation of his one-third interest in an estate failed because his conduct up to the day he filed the renunciation had been consistent with an intent to accept his legacy; *i.e.,* he waited ten months before executing the renunciation and had implied during summary proceedings[3] only a few days earlier that he intended to accept the legacy once a final accounting had been completed. 298 N.Y. at 404–405, 83 N.E.2d at 854–55. Judge Fuld wrote in dissent that, because one's motive in renouncing a legacy is irrelevant to the question of whether the renunciation was valid, the legatee's ten-month silence and equivocal statements during summary proceedings were insufficient evidence of an intent to accept any benefit from the estate. 298 N.Y. at 405–409, 83 N.E.2d at 855–58.

The facts of the instant case are distinguishable. Mapes promptly and clearly expressed his intention to renounce his legacy by executing the Renunciation and having it timely filed with the appropriate court. The stated purpose of Mapes's taking the car was to prevent its loss or theft, and the estate representative subsequently ratified that decision. Mapes's temporary possession of a vehicle which he believed would pass to one of his daughters was neither inconsistent with that renunciation, nor did it ever exceed the scope of the estate representative's toleration of that possession. At no time did Mapes take title to the automobile, use it as collateral for a loan, or engage in any other conduct that would imply an intent to keep the car. The vehicle, which constituted a mere 1% of the value of the estate, was subsequently sold and the proceeds retained by the estate representative.

In light of these facts, we reject the government's argument that Mapes's *de minimis* use of estate property constituted an "acceptance of benefits" within the meaning and intent of APC § 2801.E.2.[4]

**2.** Aside from two unpublished district court decisions and a parenthetical reference in a reported decision of the Arizona Court of Appeals, *see Beaman v. Beaman (In re Estate of Beaman),* 119 Ariz. 614, 617, 583 P.2d 270, 273 (1978), the only published references to APC § 2801 are in footnotes from law review articles which merely cite to APC § 2801 without discussing it. *See e.g.* Malcolm L. Morris, "Disclaiming Joint Interests: One New Trick and No Longer a Dog?," 1983 *Ariz.St.L.J.* 45, 51 n. 42, 68 n. 140; D.L. Uchtmann & H.E. Hartness, "Qualified Disclaimer of Joint Tenancies: A Policy and Property Law

Analysis," 22 *Ariz.L.Rev.* 987, 996 n. 37, 997 n. 50 (1980); John H. Martin, "Perspectives on Federal Disclaimer Legislation," 46 *U.Chi.L.Rev.* 316, 319 n. 12 (1979).

**3.** The legatee was being examined by a judgment creditor at the time.

**4.** The government also asserts that the Renunciation was invalid because Mapes's half-interest was "encumbered" by the tax lien. *See* APC § 2801.E.1. ("[An] encumbrance ... bars the

## II

The Children have also asked for attorney's fees on appeal. We note, however, that they have not "establishe[d] that the position of the United States ... was not substantially justified[.]" *See* 26 U.S.C. § 7430(c)(4)(A)(i). Accordingly, the request for fees must be denied.

REVERSED.

AMERICAN STATES INSURANCE COMPANY, Plaintiff–Appellant,

v.

John V. KEARNS, doing business as Tahoe Boat Company; Tahoe Boat Company; Donzie Marine Corp.; Bruce R. Elworthy; Deere Credit Service, Inc.; Anne B. Marshall, Defendants–Appellees.

No. 92–16266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided Jan. 26, 1994.

right to renounce as to the property."). We reject this contention for two reasons. First, the argument assumes without proving the very point at issue, *viz.*, that Mapes had a property interest in the estate upon which an encumbrance (tax lien) existed. Second, it flies in the face of the express wording of the statute, which states that an encumbrance will render a renunciation invalid if the "encumbrance ... [was] made *by the person renouncing*". *Id.* (emphasis added).